UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HECTOR ACUNA,

                           Plaintiff,

v.                                        Action No. 3:10-CV-905

CHASE HOME FINANCE, LLC,
FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

                           Defendants.

**MEMORANDUM OPINION**

THIS MATTER is before the Court on Defendants' Motion to Dismiss. (Doc. No. 3.) Defendants move the Court to dismiss the Complaint with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated below, the Court GRANTS the Motion to Dismiss with respect to Counts I, II, and IV, and DENIES the Motion to Dismiss with respect to Count III.

**I. BACKGROUND**

Plaintiff Hector Acuna ("Acuna") obtained a mortgage loan from First Horizon Home Loans in the amount of $ 162,000.00 on December 28, 2007. The loan was evidenced by a Note and secured by a Deed of Trust on the Richmond, Virginia, home Acuna purchased with the loan money. Defendant Chase Home Finance, LLC ("Chase") purchased the loan and Defendant Federal National Mortgage Association ("Fannie Mae") insured the loan.

On April 13, 2009, Chase and Fannie Mae, an agent for the United States, entered into a Commitment to Purchase Financial Instrument and Servicer Participation Agreement ("SPA") for the Home Affordable Modification Program ("HAMP"). Under the SPA, Chase

1

was required to comply with HAMP guidelines issued by the United States Department of the Treasury ("Treasury Department"). Treasury Department Supplemental Directive 10-02 prohibits Chase from initiating foreclosure proceedings prior to taking certain steps.

Also in April 2009 Acuna began struggling to pay his mortgage. Acuna contacted Chase in November and December of 2009 and January 2010 to arrange a loan modification. A Chase representative told Acuna his modification request would receive priority if he defaulted on the loan. Acuna subsequently withheld payments for April, May, and June 2010 and attempted to negotiate a modification. Chase refused to provide a modification, but offered a payment plan that spread the missed payments out over time. Acuna could not make these payments. Chase then advised Acuna to pay any amount he could toward his mortgage. Acuna made payments of $ 1,000 in July and August 2010. Chase accepted the July payment, but returned the August check to Acuna.

Chase initiated foreclosure proceedings July 16, 2010, by appointing substitute trustees under the Deed of Trust. Chase subsequently sent Acuna the HAMP modification documents during the last week of July 2010. On August 2, 2010, the substitute trustees notified Acuna that his home was scheduled to be sold at an August 20, 2010, foreclosure sale. Acuna returned the HAMP documents to Chase on August 12, 2010. When Acuna contacted Chase on August 16, 2010, a representative told him the foreclosure sale would be put on hold. Contrary to this information, however, the substitute trustees sold the home on August 20, 2010, and conveyed it to Fannie Mae, the highest bidder.

Chase continued to contact Acuna regarding a possible HAMP modification after the foreclosure. Acuna was asked to vacate the home September 2, 2010. On September 7, 2010, Chase sent Acuna a letter acknowledging receipt of the HAMP modification request,

but two days letter Chase informed Acuna his application was incomplete. Fannie Mae subsequently issued a Summons for Unlawful Detainer to evict Acuna.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." A motion to dismiss "test[s] the sufficiency of the complaint to see if it alleges a claim for which relief can be granted." Dolgaleva v. Va. Beach City Pub. Sch., 364 F. App'x. 820, 825 (4th Cir. 2010). A pleading states a claim if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must allege facts sufficient "[t]o raise a right to relief above the speculative level" and provide "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). A claim is plausible on its face if "[p]laintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

## III. DISCUSSION

### a. Count I: Breach of Contract Against Chase

Acuna's first allegation of breach of contract arises out of the SPA between Chase and Fannie Mae. Acuna claims Chase violated the SPA and Treasury Department Supplemental Directive 10-02 by: (1) referring Acuna's home to foreclosure before soliciting his participation in HAMP; (2) failing to suspend foreclosure proceedings after establishing "right party contact" with Acuna; (3) failing to provide proper notices and give Acuna sufficient time to provide the initial HAMP package; (4) failing to suspend the foreclosure after receiving the initial package seven days before the scheduled foreclosure

sale; (5) failing to evaluate Acuna's initial package for completeness; and (6) proceeding with a foreclosure sale despite the fact that none of the events required by the Supplemental Directive had taken place.

Defendants argue HAMP does not create a private right of action and, thus, Acuna lacks standing to enforce the SPA. Enforcement of HAMP guidelines is a task Congress and the Treasury Department assigned exclusively to Freddie Mac. Consequently, many courts have concluded borrowers have no private right of action under HAMP. See, e.g., Marks v. Bank of Am., N.A., No. 3:10-CV-08039, 2010 U.S. Dist. LEXIS 61489, at *16-20 (D. Ariz. June 22, 2010); Shurtliff v. Wells Fargo Bank, N.A., No. 1:10-CV-165, 2010 U.S. Dist. LEXIS 117962, at *10 (D. Utah Nov. 5, 2010). Moreover, the SPA provides it "shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." Compl. Ex. C, ¶ 11(E). Because Acuna is neither a party to the agreement nor a successor in interest, Defendants argue Acuna does not have standing to enforce the agreement.

Defendants also argue Acuna does not have standing to enforce the SPA as a third-party beneficiary. "An agreement will be enforced in favor of a third party beneficiary when the beneficiary establishes that the parties to the agreement clearly and definitely intended to confer a benefit on the beneficiary." First Sec. Fed. Sav. Bank v. McQuilken, 253 Va. 110, 114 (1997). Defendants contend the SPA did not establish Chase or Fannie Mae intended to confer a benefit upon Acuna.

Acuna argues he is an intended third-party beneficiary of the SPA and is therefore entitled to enforce its provisions. Acuna contends the SPA requires Chase to perform services described in the program guidelines and the Treasury Department's supplemental

4

directives. Because the SPA incorporates HAMP program guidelines and supplemental directives into the agreement, Acuna believes he should be permitted to enforce the same as a third-party beneficiary.

Acuna relies on the Restatement (Second) of Contracts for the proposition "[a] promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty." Restatement (Second) of Contracts § 304 (1981). Acuna states the Court should determine whether he is a third-party beneficiary by considering whether the contract reflects the parties' express or implied intent to benefit him as a third party. See Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 706 (4th Cir. 2007). He further states the intent to benefit a third party can be determined by looking at the contract itself and the circumstances surrounding its formation. Id.

Acuna concedes third parties who benefit from government contracts are generally considered incidental beneficiaries, absent clear intent to the contrary. Klamath Water Users Protective Assoc. v. Patterson, 204 F.3d 1206, 1212 (9th Cir. 1999) (holding the fact that the contracting parties had the third party in mind when entering into the contract is not sufficient to confer third-party beneficiary status). Acuna further concedes many district courts have held borrowers are not intended beneficiaries of SPAs between loan servicers and Fannie Mae, but argues all of those cases ultimately rely on reasoning from Patterson. Although the contract at issue in Patterson benefitted the public, there was no indication that the promisor had an obligation to perform services for third parties. Because the SPA in the instant case imposes a duty to perform services for third parties, Acuna argues the Court should not consider Patterson or its progeny.

5

Acuna instead points to <u>Marques v. Wells Fargo Home Mortgages, Inc.</u>, No. 09-CV-1985-L, 2010 U.S. Dist. LEXIS 81879 (S.D. Cal. Aug. 12, 2010), a HAMP case that acknowledges the express incorporation of program documentation into the SPA. The Southern District of California pointed to several provisions in the program guidelines requiring the servicer to perform services directly to or for the borrower. <u>Marques</u>, 2010 U.S. Dist. LEXIS 81879, at *12-14. The court ultimately held in <u>Marques</u>

> [u]pon a fair reading of the [SPA] in its entirety and in the context of its enabling legislation, it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers. . . . The [SPA] on its face expresses a clear intent to directly benefit the eligible borrowers."

<u>Id</u>. at *15.

Similarly, Acuna argues, Supplemental Directive 10-02 requires the servicer to perform services directly to or for the borrower. Specifically, Supplemental Directive 10-02 requires the servicer to solicit loan modifications from borrowers; resend the Initial Package to the borrower if the borrower does not respond to the first Initial Package; and satisfy certain requirements before foreclosing on a home. Compl. Ex. D, pp. 2-5.  Thus, Acuna concludes, this Court should follow <u>Marques</u> and hold the SPA expressed a clear intent to directly benefit him. Consequently, he has standing to enforce the SPA as an intended third-party beneficiary.

It is well-settled that borrowers do not have a private right of action under HAMP. <u>See</u> <u>Hart v. Countrywide Home Loans, Inc.</u>, 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010); <u>Speleos v. BAC Home Loans Servicing, L.P.</u>, No. 10-11503-NMG, 2010 U.S. Dist. LEXIS 132111, at *16 (D. Mass. Dec. 14, 2010) ("[t]here is no private right of action under HAMP."); <u>Zeller v. Aurora Loan Servs., LLC</u>, No. 3:10-CV-44, 2010 U.S. Dist. LEXIS 80449, at

6

*2 (W.D. Va. Aug. 10, 2010);  Hoffman v. Bank of Am., N.A., No. C 10-2171 SI, 2010 U.S. Dist. LEXIS 70455, at *10 (N.D. Cal. June 30, 2010) ("[i]t would be unreasonable for a qualified borrower seeking a loan modification to rely on the HAMP servicer's agreement as granting him enforceable rights since the agreement does not actually require that the servicer modify all eligible loans[.]"). Consequently, Acuna can survive the Motion to Dismiss Count I only if he is a third-party beneficiary to the contract between Chase and Fannie Mae.

Federal law controls the interpretation of contracts to which the United States is a party, and courts look to general contract principles when interpreting such a contract. United States v. Seckinger, 397 U.S. 203, 209-10 (1970). "The appropriate test under federal common law for third-party beneficiary status 'is whether the contract reflects the express or implied intention of the parties to benefit the third party.'" Sec'y of State for Def. v. Trimble Navigation Ltd., 484 F.3d 700, 706 (4th Cir. 2007) (quoting Schuerman v. United States, 30 Fed. Cl. 420, 433 (1994)). A party attempting to prove his status as a third-party beneficiary must demonstrate that the contract reflects an intention to benefit him "personally" or "directly."  Glass v. United States, 258 F.3d 1349, 1353-54 (Fed. Cir. 2001).  Since the government typically acts in the public interest, when a third party benefits from a government contract, there is a presumption that the benefit recipient is an incidental beneficiary, and, consequently, has no right to enforce the contract. S.E.C. v. Prudential Sec., Inc., 136 F.3d 153, 158 (D.C. Cir. 1998).

District courts uniformly hold borrowers are not third-party beneficiaries to HAMP agreements. See, e.g., Steffens v. Am. Home Mortg. Servicing, Inc., No. 6:10-1788, 2011 U.S. Dist. LEXIS 26586, at *15 (D.S.C. Jan. 5, 2011); Winn v. Chase Mortg. Servs., No. 2:10-CV-395 (E.D. Va. Oct. 29, 2010) (Jackson, J.); Zoher v. Chase Home Fin., No. 10-14135-CIV, 2010 U.S.

7

Dist. LEXIS 109936, at *11 (S.D. Fla. Oct. 15, 2010) ("[b]orrowers may not attempt to enforce HAMP compliance as third-party beneficiaries of a contract."); Hoffman v. Bank of Am., N.A., No. C 10-2171 SI, 2010 U.S. Dist. LEXIS 70455, at *14 (N.D. Cal. June 30, 2010) ("[b]orrowers are not third party beneficiaries under the HAMP servicer's agreement."); Escobedo v. Countrywide Home Loans, Inc., No. 09-CV-1557, 2009 U.S. Dist. LEXIS 117017, at *7 (S.D. Cal. Dec. 15, 2009) ("[q]ualified borrowers are incidental beneficiaries of the Agreement and do not have enforceable rights under the contract.").

The SPA states it "shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted successors-in-interest." Compl. Ex. C, ¶ 11(E). Thus, the goal of the agreement between Chase and Fannie Mae is not to benefit any third-party homeowner. Acuna, consequently, cannot prove Fannie Mae and Chase entered into the SPA with the intent to benefit him personally and directly. Accordingly, Acuna does not have third-party beneficiary standing to enforce HAMP and Count I is dismissed.

    b. Count II: Equitable Estoppel Claim Against Chase and Fannie Mae

Acuna alleges equitable estoppel based on two misrepresentations. First, he alleges a Chase representative falsely represented to him that his request for modification would receive higher priority if he defaulted on his loan. Second, he alleges a Chase representative falsely assured him in August 2010 the foreclosure sale would be put on hold.

Defendants contend the Court should dismiss Count II because Acuna has not alleged misrepresentations of material fact or that he changed his position to his detriment in reliance on misrepresentations. First, Defendants argue, Acuna claims Chase told him his request for loan modification would receive higher priority if he defaulted. Acuna does not allege Chase promised to modify his loan if he withheld payments. Chase did discuss a loan

modification with Acuna. See Compl. ¶¶ 12 – 15. As such, Chase did not falsely represent a material fact. Second, Defendants state Acuna began struggling with loan payments in April 2009, long before he actually defaulted. Thus, even if a Chase representative told him to withhold his April, May, and June 2010 payments, Acuna has not shown he changed his position to his detriment in reliance on this statement. Moreover, Acuna now claims he did nothing to prevent the foreclosure in reliance on Chase's representation. Defendants argue Acuna cannot retroactively allege forebearance. Because there is no false representation of a material fact and Acuna did not change his position to his detriment in reliance on such a fact, Defendants maintain Acuna has not stated a claim for equitable estoppel.

A claim for equitable estoppel requires allegations that:

> (1) A material fact was falsely represented or concealed; (2) The representation or concealment was made with knowledge of the facts; (3) The party to whom the representation was made was ignorant of the truth of the matter; (4) The representation was made with the intention that the other party should act upon it; (5) The other party was induced to act upon it; and (6) The party claiming was estoppel was misled to his injury.

Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc., 221 Va. 81, 86 (1980).

Acuna has not adequately pled the elements of equitable estoppel for either of Chase's purported misrepresentations. With respect to the first misrepresentation – that Acuna had to default on his loan to receive priority in the home modification system – Acuna has not shown that this was a false representation. Chase agreed to discuss modification with Defendant if he defaulted. Compl. ¶ 13. Subsequent to this conversation, Chase discussed modification with Acuna. Compl. ¶¶ 15, 31, 36. Thus, Acuna has not adequately pled the first element of equitable estoppel and cannot succeed on this claim.

As for the second alleged misrepresentation – that the foreclosure had been put on hold – Acuna has not shown that he changed his position in reliance on this information, as

he does not allege he would have taken steps to prevent the foreclosure in the absence of this information. Moreover, Acuna does not allege the Chase representative knew the home foreclosure had not been put on hold when he or she made the comment. Thus, Acuna has not set forth a claim for equitable estoppel. Because Acuna's Complaint does not properly allege equitable estoppel, Count II is dismissed.

    c.   <u>Count III: Breach of Contract Against Chase</u>

Count III alleges Chase breached the implied covenant of good faith and fair dealing embodied in the Note and Deed of Trust by inducing Acuna to default on his loan, falsely assuring him of the status of his HAMP modification, falsely assuring him the foreclosure had been put on hold, and failing to follow HAMP guidelines before foreclosing. Defendants move the Court to dismiss Count III because Acuna does not allege Chase breached a contractual term of the Note or Deed of Trust.

Defendants argue Virginia does not recognize an independent claim for breach of the covenant of good faith and fair dealing. Consequently, because Acuna does not allege Chase breached a written term of the Note or Deed of Trust, he cannot maintain a claim for breach of the covenant of good faith and fair dealing. Acuna, on the other hand, maintains he does not have to allege a breach of a written term of the Note or Deed of Trust to state a claim for breach of the implied covenant of good faith and fair dealing.

An implied covenant of good faith and fair dealing exists in all valid and binding contracts in Virginia. <u>Ward's Equip. v. New Holland N. Am.</u>, 254 Va. 379, 385 (1997). "Virginia courts have held that a party's breach of an implied duty does not give rise to an independent tort, but gives rise to a cause of action for breach of contract only." <u>Legard v. EQT Prod. Co.</u>, No. 1:10-CV-00041, 2011 U.S. Dist. LEXIS 2943, at *34-35 (W.D. Va. Jan. 11,

Case 3:10-cv-00905-JRS   Document 28   Filed 05/17/11   Page 11 of 13 PageID# 356

2011) (citing Charles E. Brauer Co. v. NationsBank of Va., N.A., 251 Va. 28, 33 (1996)). Because Acuna alleges Chase breached the implied covenant of good faith and fair dealing by: (1) inducing him to default by telling him his chances of receiving a loan modification would increase if he did so; (2) falsely assuring Acuna about the status of his modification; (3) falsely assuring Acuna the home would not be sold at the foreclosure sale; and (4) failing to follow HAMP guidelines, he has stated a claim for breach of contract based on breach of the implied covenant of good faith and fair dealing. Accordingly the Motion to Dismiss is denied with respect to Count III.

### d.  Count IV: Constructive Fraud Claim Against Chase

Acuna's constructive fraud claim alleges Chase wanted him to rely on misrepresentations of material fact and Chase knew or should have known the representations were false. Acuna further alleges he reasonably relied on Chase's misrepresentations to his detriment, as evidenced by the loss of his home in the foreclosure sale. Defendants move the Court to dismiss Count IV because Acuna does not allege a misrepresentation of a material fact and the misrepresentations alleged relate to duties arising from the parties' contract.

> To state a claim for constructive fraud, a plaintiff must show
>
> [b]y clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation. Additionally, '[a] finding of . . . constructive fraud requires clear and convincing evidence that one has represented as true what is really false, in such a way as to induce a reasonable person to believe it, with the intent that the person will act upon this representation.'

Mortarino v. Consultant Eng'g Servs., 251 Va. 289, 295 (1996) (quoting Evaluation Research Corp. v. Alequin, 247 Va. 143, 148 (1994)).

11

Defendants contend Acuna has not alleged a misrepresentation of a material fact because the Complaint does not allege Chase misrepresented material facts prior to the foreclosure. Defendants also contend the purported misrepresentations are not actionable as fraud because Defendants' duties arise solely from the existence of a contract between the parties. Virginia law prohibits Acuna from suing in tort for breach of duties that arise solely by contract. See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc., 256 Va. 553, 559 (1998). Thus, Acuna has failed to state a claim for constructive fraud.

Acuna contends he has adequately pled constructive fraud because a Chase representative falsely represented to him that his request for loan modification would be considered sooner if he defaulted. Acuna argues this was a material misstatement of fact upon which he relied and after which he materially changed his position to his detriment. Acuna further states Chase told him in August 2010 that the foreclosure sale had been put on hold, which was a misrepresentation of material fact, as evidenced by the fact that the home was sold as scheduled. Acuna states he refrained from taking action to prevent the sale in reliance on this representation.

"'Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract,' . . . and a plaintiff may recover damages for both fraud and breach of contract." Hitachi Credit Am. Corp. v. Signet Bank, 166 F.3d 614, 628 (4th Cir. 1999) (quoting City of Richmond v. Madison Mgmt. Group, Inc., 918 F.2d 438, 446-47 (4th Cir. 1990)). While a party may "show both a breach of contract and a tortious breach of duty . . . 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'" Richmond Metro. Auth., 256 Va. at 558 (quoting Foreign Mission Bd. v. Wade, 242 Va. 234, 241 (1991)). The

12

misrepresentations cited by Acuna all arise out of the parties' contractual duties, as they pertain to the parties' obligations under the Note and Deed of Trust, including loan payments, the foreclosure, or the modification process. Thus, Chase has not breached a common law duty owed Acuna. Accordingly, Acuna may not bring a tort claim and Count IV is dismissed.

**IV. CONCLUSION**

For the reasons stated above, the Court GRANTS the Motion to Dismiss with respect to Counts I, II, and IV, and DENIES the Motion to Dismiss with respect to Count III.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Chief United States District Judge

ENTERED this \_\_16th\_\_\_ day of May 2011