IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
701 East Broad Street
Richmond, VA 23219

**HECTOR ACUNA**
    Plaintiff

v.                                                                     Civil Action No. 3:10-cv-905

**CHASE HOME FINANCE LLC**

and

**FEDERAL NATIONAL MORTGAGE ASSOCIATION**

    Defendants

## FIRST AMENDED COMPLAINT

COMES NOW, the Plaintiff, Hector Acuna, and makes the following First Amended Complaint in the captioned action:

## PARTIES

1. Hector Acuna is a natural person residing at 3112 Manor Drive, Richmond (Henrico County), Virginia.

2. Chase Home Finance LLC ("Chase") is a limited liability company doing business in Henrico County.

3. Federal National Mortgage Association ("Fannie Mae") is a nationally chartered corporation doing business in Henrico County.

# FACTS

4. On December 28, 2007 (the "Loan Date"), Mr. Acuna purchased the property at 3112 Manor Drive, Richmond, Virginia (the "Home").

5. To purchase the Home, Mr. Acuna borrowed $162,000 (the "Loan") from First Horizon Home Loans, a division of First Tennessee Bank N.A. ("First Horizon").

6. The Loan was evidenced by a Note dated as of the Loan Date from Mr. Acuna to First Horizon (the "Note").

7. Mr. Acuna's obligations under the Loan were secured by a Deed of Trust dated as of the Loan Date (the "Deed of Trust") encumbering the Home. The Deed of Trust was recorded in the Clerk's Office of the Circuit Court of Henrico County, Virginia (the "Clerk's Office") in Deed Book 4455, page 1076.

8. Upon information and belief, the Loan was sold to Chase, and Chase became the holder of the Note, or alternatively, Chase was engaged by the owner of the Loan to service the Loan.

9. Upon information and belief, Fannie Mae provided mortgage insurance for the Loan.

10. At the Loan Date, the monthly payments due under the Loan were $1,023.96 for principal and interest, plus a $301.90 monthly escrow for real estate taxes, property insurance, and mortgage insurance, for a total payment of $1,325.86.

11. In April of 2009, Mr. Acuna's wife was involved in an accident, and the resulting medical bills, combined with a decline in Mr. Acuna's mechanic business, caused Mr. Acuna to struggle to pay the monthly Loan payments.

12. Mr. Acuna contacted Chase in November and December of 2009 and in January of 2010 to attempt to arrange a modification of the terms of the Loan, without success.

13. During a telephone call in February of 2010, a Chase representative told Mr. Acuna that his case would not receive priority unless he was in default under the Loan. The Chase representative advised Mr. Acuna to withhold payments so that Chase would discuss the modification with him.

14. On the advice of the Chase representative, Mr. Acuna withheld the April 2010, May 2010, and June 2010 payments, and went into default under the Loan.

15. But for the advice of the Chase representative, Mr. Acuna would not have withheld the April 2010, May 2010, and June 2010 payments, and would not have gone into default.

16. Chase has furnished a copy of a letter dated June 17, 2010 bearing the legend, "Response to Your Request for a Loan Modification," (the "First HAMP Notice") requesting that Mr. Acuna furnish information for a loan modification under the federal Home Affordable Modification Program ("HAMP").

17. Mr. Acuna did not receive the First HAMP Notice.

18. On or about July 16, 2010, Mr. Acuna received a letter from Chase dated July 15, 2010 and entitled "Final Notice" (the "Second HAMP Notice") and notifying Mr. Acuna that he had until July 30, 2010 to furnish to Chase information for a HAMP loan modification. A copy of the Second HAMP Notice is attached as Exhibit A.

19. On July 16, 2010, Chase initiated foreclosure proceedings against the Home by appointing Johnie R. Muncy and F&M Services, LC (the "Substitute Trustees," and each

one a "Substitute Trustee") as substitute trustees under the Deed of Trust. A copy of the Substitution of Trustee executed by Chase is attached as <u>Exhibit B</u>.

20. On August 2, 2010, the Substitute Trustee sent a notice to Mr. Acuna that the Home was scheduled to be sold at foreclosure on August 20, 2009.

21. On August 12, 2010, Mr. Acuna sent to Chase by Federal Express a Home Affordable Modification Plan ("HAMP") Request for Modification and Affidavit, a 4506T Request for Transcript of Tax Return, and his two most recent bank statements (collectively, the "Initial Package"), which were the items that Chase had requested in connection with the HAMP modification.

22. On August 13, 2010, Mr. Acuna called to verify Chase's receipt of the Initial Package and he was asked to fax the Initial Package to Chase, which he did that day.

23. On August 16, 2010, Mr. Acuna called to verify the status of the Initial Package and was asked to send a profit and loss statement for his company, which he did that day. During the August 16, 2010 telephone conversation, Mr. Acuna was told that the foreclosure sale of the Home would be put on hold.

24. Upon information and belief, the Substitute Trustee sold the Home at foreclosure on August 20, 2009.

25. Upon information and belief, Fannie Mae was the high bidder at the purported foreclosure sale and has taken title to the Home.

26. Fannie Mae has issued a Summons for Unlawful Detainer to evict Mr. Acuna from the Home.

27. On April 13, 2009, Chase and Fannie Mae, as agent for the United States, signed a "Commitment to Purchase Financial Instrument and Servicer Participation Agreement" (the "SPA"), a copy of which is attached hereto as <u>Exhibit C</u>.

28. Pursuant to Section 1A of the SPA, Chase agreed to perform modification and other foreclosure prevention services "described in . . . (ii) the Program guidelines and procedures issued by the Treasury, . . . and (iii) any supplemental documentation, instructions, bulletins, letters, directives, or other communications . . . issued by the Treasury, Fannie Mae, or Freddie Mac . . . (the "Supplemental Directives")".

29. U.S. Treasury Department Supplemental Directive 10-02 issued March 24, 2010 ("SD 10-02"), a copy of which is attached as <u>Exhibit D</u>, contains provisions limiting the right of a lender to foreclose on a borrower's home while a HAMP modification is pending.

30. Once a lender has made contact with a borrower regarding a HAMP modification (referred to in SD 10-02 as "right party contact"), the lender must send a communication to the borrower describing the information required from the borrower (the "Initial Package"), and stating that while the HAMP evaluation process is continuing, the home will not be referred to foreclosure, or sold at foreclosure if the foreclosure process has already been initiated. The communication must give the borrower at least 15 days to send an Initial Package. If the borrower does not send the Initial Package within the 15-day period, the lender must send another communication to the borrower and give the borrower another 15 days to submit the Initial Package (SD 10-02 at p.3).

31. Only if the borrower fails to respond within the second 15-day period may the lender determine the borrower to be ineligible for HAMP (SD 10-02 at p.3).

32. A lender may not refer any loan to foreclosure, or conduct a foreclosure sale unless and until one of the following occurs (collectively, the "Required Events"):

- The borrower is evaluated for HAMP and determined to be ineligible for the program.
- The borrower is offered a trial period plan, but fails to make a trial period payment by the last day of the month in which such payment is due.
- The [lender] has established right party contact, has sent at least two written requests asking the borrower to supply required information in accordance with [SD 10-02] and has otherwise satisfied the Reasonable Effort solicitation standard, and the borrower failed to respond by the dates indicated in those requests.
- The servicer has satisfied the Reasonable Effort solicitation standard without establishing right party contract.
- The borrower or co-borrower states he or she is not interested in pursuing a HAMP modification and such statement is reflected by the servicer in their servicing system.

(SD 10-02 at 5).

33. None of the Required Events had occurred at the time Chase referred the Home to foreclosure.

34. Chase violated the SPA, and the U.S. Treasury Department Supplemental Directives incorporated by reference into the SPA by referring the Home to foreclosure prior to the deadline set out in the Second HAMP Letter for Acuna to return his modification information to Chase.

## BREACH OF CONTRACT

35. The Plaintiff incorporates herein by reference all other factual allegations contained in this Complaint.

36. The Note and Deed of Trust contained an implied covenant obligating the Chase to treat Mr. Acuna with good faith and fair dealing.

37. Chase failed to treat the Mr. Acuna with good faith and fair dealing, by (i) inducing Mr. Acuna to default by telling him that his chances of receiving a loan modification would increase if he were in default; (ii) falsely assuring Mr. Acuna about the status of the HAMP loan modification, (iii) falsely assuring Mr. Acuna that the Home would not be sold, and (iv) failing to meet governmental prerequisites for the foreclosure of the Home.

38. Chase's failure to treat the Mr. Acuna with good faith and fair dealing breached the Note and Deed of Trust.

39. The breaches of the contract have caused the Mr. Acuna to suffer economic damages.

40. Because Chase had breached the terms of the Note and Deed of Trust, Chase was not entitled to exercise the remedy of foreclosure under the Deed of Trust.

WHEREFORE, the Plaintiff requests that the Court set aside the foreclosure sale, and award compensatory damages of not less than $10,000, court costs, and such further legal and equitable relief as this court deems appropriate.

## DEMAND FOR JURY TRIAL

41. Mr. Acuna calls for a trial by jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court,

A. Set aside the sale at foreclosure of the Home and order Fannie Mae to reconvey the Home to Mr. Acuna.

  B. Award compensatory damages of not less than $10,000, court costs and such further legal and equitable relief as this court deems appropriate.

  C. Award such further legal and equitable relief as this court deems appropriate.

        Respectfully Submitted,

        HECTOR ACUNA
        By Counsel


CENTRAL VIRGINIA LEGAL AID SOCIETY, INC.
c/o James D. Thornton
5030 Sadler Place, Suite 204
Glen Allen, Virginia 23060
Phone: 804-377-3700
Fax: 804-377-3704
jim.thornton@thorntonassociates.com
Counsel for Hector Acuna

By: /S/ James D. Thornton_____
  James D. Thornton (VSB #28013)

**CERTIFICATE OF SERVICE**

I, James D. Thornton, do hereby certify that the foregoing was served electronically through the Court's CM/ECF system this 9th day of June, 2011 to:

>Calvin W. Fowler, Jr.
>J.P. McGuire Boyd, Jr.
>Williams Mullen
>Post Office Box 1320
>Richmond, VA 23218-1320
>wfowler@williamsmullen.com
>mboyd@williamsmullen.com
>Counsel for Defendants

 /S/ James D. Thornton
James D. Thornton

CENTRAL VIRGINIA LEGAL AID SOCIETY, INC.
c/o James D. Thornton
5030 Sadler Place, Suite 204
Glen Allen, Virginia 23060
Phone: 804-377-3700
Fax: 804-377-3704
jim.thornton@thorntonassociates.com
Counsel for Hector Acuna